IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAULETTE BANKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-CV-439-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Paulette Banks ("plaintiff") requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 8). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that plaintiff was not disabled. On appeal, plaintiff asserts the ALJ failed to: (1) properly consider all of the medical source evidence; (2) perform a proper step four determination; and (3) perform a proper credibility determination. (Dkt. # 13 at 2). For the reasons discussed below, this Court AFFIRMS the decision of the Commissioner.

**Procedural History**

On April 13, 2009, plaintiff filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 216(i), 223(d), and 1614(a)(3)(A). Plaintiff alleges disability due to "nerve damage in left hand" beginning January 1, 2009. (R. 134-35). After being denied benefits, plaintiff filed a written request for a hearing before an ALJ on February 1, 2010. The ALJ conducted a hearing on July 19, 2010. (R. 26-58). On September 22, 2010, the ALJ issued her decision, denying benefits. On November 18, 2010, plaintiff appealed this decision to the Appeals Counsel. (R. 5). Following the decision, the Appeals Council upheld the ALJ's decision and denied plaintiff's request for review on May 24, 2011. (R. 1-4). The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On July 12, 2011, plaintiff timely filed the subject action with this Court. (Dkt. # 2).

## Standard of Review and Social Security Law

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## **Background**

Plaintiff was born on June 20, 1958, and was 52 years old at the time of the ALJ's decision on September 22, 2010. (R. 39, 117). She is a high school graduate and testified that she

holds both a Certified Medical Assistant ("CMA") certificate and Certified Nursing Assistant ("CNA") certificate. (R. 36, 37, 41, 138). Plaintiff's prior work history consists of employment as a housekeeper (SVP 2, light exertion), a telemarketer (SVP 3, sedentary exertion), a cashier (SVP 2, light exertion), a kitchen helper (SVP 2, medium exertion), a janitor (SVP 2, medium exertion), a daycare worker (SVP 4, light exertion), a CMA (SVP 4, medium exertion), and a CNA (SVP 4, medium exertion). (R. 53-54). Plaintiff alleges a disability onset date of January 1, 2009. (R. 117, 119). Plaintiff never married, currently lives alone, and is supported financially by her two sons. (R. 118). Plaintiff alleges that nerve damage to her left hand from an injury 20 years prior initially caused her disability. (R. 134). Plaintiff also alleges "troble [sic] with [her] right hand []" as contributing to her disability. (R. 169). At the hearing, plaintiff submitted a medication list, dated July 19, 2010, showing she currently is taking Ultram, Trazodone, Zyrtec, and Celexa. (R. 176).

At the July 19, 2010 hearing, plaintiff testified that she left her final CMA position at a nursing home because she had trouble "pushing the pills out of the package," and because she was too slow. (R. 38). She did not attempt to find other employment. (R. 39). She said numbness and stiffness in both hands "comes and goes" daily. (R. 42). Plaintiff stated she had help filling out Social Security forms, has trouble opening jars, and cannot lift a gallon of milk with one hand. (R. 43-44). She said she has trouble sleeping, and has trouble with concentration and focus. (R. 45). She also stated she does housework for 15 to 20 minutes at a time, and that her daughters-in-law help with housework. (R. 46). Plaintiff stated her right hand and arm hurt more than her left. (R. 47). She said she can drive and shop and can cook minimally, but that several days a week she does not get out of bed. (R. 47-48). She babysits her grandchildren, although not as much as in the past. (R. 14, 48-49).

Plaintiff said she sees a therapist for depression. She stated she is not currently taking medication for depression because the first medication she tried caused suicidal thoughts. Another medication was prescribed which plaintiff said she had not started because she could not afford it. (R. 50-51).

Because plaintiff had no medical evidence upon filing her claim, social security sent her for a consultative examination on July 11, 2009. (R. 178-185). Plaintiff subsequently submitted medical records ranging in time from August 4, 2009 to July 7, 2010, which include records from Morton Comprehensive Health Services, and The Orthopaedic Center. (R. 195-220). During the consultative examination performed by Patrice Wagner, D.O., plaintiff's chief complaints were pain in her left hand and wrist. (R. 178). Plaintiff only reported using one medication, Prevacid, in connection with peptic ulcer disease. Id. On examination, Dr. Wagner noted that plaintiff moved all extremities well. Dr. Wagner noted plaintiff's left hand "ha[d] some mild deformity," but observed she was able to "pick up and manipulate paperclips without difficulty on [the] right, [but was] weak on the left." (R. 179). Plaintiff's grip strength was recorded as 4/5 on the left and 5/5 on the right. Id. Plaintiff's finger to thumb opposition was noted as adequate, fine tactile manipulation of objects was normal, and Dr. Wagner noted plaintiff's range of motion was within normal limits bilaterally. Id.

On July 16, 2009, Luther Woodcock, M.D., a non-examining agency physician, reviewed plaintiff's file and assigned a medium residual functional capacity ("RFC") with no additional limitations. (R. 187-193). Dr. Woodcock summarized the consultative examiner's findings in support of this RFC, as that was the sum of medical evidence in the file.

The bulk of plaintiff's medical records, which total 26 pages, are treatment notes from Njanja M. Ruenji, PA-C, Michael Montague, PA-C, and Sheri Scott, LCSW. (R. 199-218).

These notes show medication management, an x-ray, a referral to an orthopedist, and therapy notes from Ms. Scott. There is one "Mental Residual Functional Capacity Assessment" and one "Mental Status Form," both of which clearly state they are not official Social Security forms, signed by Chris Puls, M.D. and Ms. Scott. (R. 195-198). Dr. Puls signed these forms on June 25, 2010, the only date in the record that shows any notation of his contact with plaintiff. (R. 198, 200). Dr. Puls stated on these forms that plaintiff had a marked impairment in eight (8) of the 19 categories listed. He further opined her prognosis was good "with continued treatment," then another note was added stating it was "[d]ifficult for patient to sustain work at this time," with no explanation. (R. 198).

Dr. Puls' opinion is based on treatment records from Ms. Scott, and those records consistently reported plaintiff's condition as simply "depression," with only two (2) instances of "severe depression." In her last notation, dated June 25, 2010, Ms. Scott found plaintiff to have "moderate recurrent major depression." (R. 201).

The final record in plaintiff's file is a two page examination summary from The Orthopaedic Center. (R. 219-20). Austin A. Lyle, PAC, examined plaintiff and diagnosed "[c]arpal tunnel syndrome, right wrist," and recommended a "cockup splint" and an EMG. Id. No records of an EMG are in the file.

### Decision of the Administrative Law Judge

In assessing plaintiff's qualifications for disability, the ALJ determined plaintiff was insured for Title II benefits through December 31, 2012. At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2009. The ALJ found severe impairments of "osteoarthritis in the right thumb, [an] old injury to [the] left hand and depression" at step two. At step three, the

ALJ stated she considered "all of the Listings of Impairments" and none of plaintiff's impairments met or equaled a listing. (R. 11). She performed the "special technique" at step three to decide that plaintiff's mental impairments did not meet or equal listing 12.04 (affective disorders). (R. 12-13). Before moving to step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to:

> … perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant is able to lift and/or carry 25 pounds frequently and 50 pounds occasionally. The claimant is able to stand and/or walk six hours in an eight hour work day and sit six hours in an eight hour work day. The claimant is able to push/pull 25 pounds frequently and 50 pounds occasionally. The claimant would have no postural or environmental limitations. The claimant is able to handle and finger frequently, but not constantly. The claimant is limited to simple and some complex tasks.

(R. 13). At step four, the ALJ relied on testimony from the Vocational Expert to determine that plaintiff could return to her past relevant work as a housekeeper, kitchen helper, cashier, or janitor. The ALJ then determined plaintiff had not been under a disability from January 1, 2009 through the date of her decision. (R. 19).

## Issues

Plaintiff's allegations of error are as follows:

1. The ALJ failed to properly consider all of the medical source evidence, including objective findings and opinions from treating and examining physicians;

2. The ALJ erred in finding plaintiff could return to her past relevant work at step four; and

3. The ALJ failed to perform a proper credibility determination.

(Dkt. # 13 at 2).

## Discussion

### Medical source evidence

Plaintiff argues the ALJ failed to properly consider the opinion of Chris Puls, M.D., regarding plaintiff's depression and ability to work. Id. Plaintiff claims Dr. Puls is a treating

7

physician and that the ALJ improperly failed to give his opinion controlling weight, failed to apply the Goatcher factors to his opinion, and failed to properly explain what weight was given to his opinion. Plaintiff also complains under this allegation of error that the ALJ failed to order a mental consultative examination and failed to resolve an internal inconsistency, claiming the ALJ found depression to be a severe impairment at step two, yet only included mild limitations in her decisional RFC finding. (Dkt. # 13 at 2-3). The Court disagrees with each of these arguments.

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Hackett, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he

8

must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527, and § 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in her decision for the weight she ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ rejects the opinion completely, she must then give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished)[1].

If a treating physician's opinion addresses an issue ordinarily reserved to the Commissioner, such as a claimant's ability to work or the ultimate question of disability, the ALJ

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

may not give controlling weight to that opinion. See Butler v. Astrue, 410 Fed.Appx. 137, 142 (10th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)) (unpublished). While a treating physician's opinion is ordinarily entitled to controlling weight, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. The ALJ may not ignore those opinions but "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record," using the factors set forth in 20 C.F.R. § 404.1527(d), and § 416.927(d), cited *supra*.

The record contains evidence of only one visit to Dr. Puls. This visit occurred on June 25, 2010, and was the result of a referral from Ms. Scott for medication management. (R. 200-01). Dr. Puls and Ms. Scott completed a "Mental Residual Functional Capacity Assessment" form and "Mental Status Form" on this same day. These forms indicate that Dr. Puls and Ms. Scott believe that plaintiff has a marked limitation in eight (8) of the nineteen areas listed on the mental RFC form, and a moderate limitation in the remaining eleven areas; however, there is no substantial evidence in the record to support these findings. It appears Ms. Scott, not Dr. Puls, completed the mental status form, as there is a note stating "[p]atient to continue to see Dr. Puls for medication management ie [sic] anti-depressant medication." (R. 198). This form also states plaintiff has a "[g]ood prognosis with continued treatment," before claiming it is "difficult to state how she would respond in a work environment," then concluding by stating it is "[d]ifficult for patient to sustain work at this time." Id.

The only mental health records for plaintiff are Ms. Scott's notes from six counseling sessions from April 22, 2010 to June 25, 2010. These notes are based on plaintiff's subjective complaints to Ms. Scott, and the only treatment notes show "individual psychiatric therapy" with no notations of medication for depression until June 25, 2010. The majority of Ms. Scott's notes

assess plaintiff with "depression." (R. 205-06, 208-10). There are two notations of "severe" depression on June 15, 2010 and June 8, 2010 (R. 203-04), yet Ms. Scott's last note in the record, dated June 25, 2010, states plaintiff suffers "moderate recurrent major depression." (R. 201).

The Court finds the ALJ properly handled Dr. Puls' opinion. Although plaintiff asserts that Dr. Puls is a "treating physician," the evidence shows he only examined plaintiff one time. (R. 17). See Doyal v. Barnhart, 331 F.3d 750, 762 (10th Cir. 2003) (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)) ("The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.") (emphasis added). The ALJ applied the Goatcher factors to Dr. Puls' opinion, even though his opinion cannot be considered that of a treating physician, and explained her reasons for giving the opinion little weight. Id. She noted his opinion was formed after a "one time evaluation" of plaintiff, "together with counseling notes for six visits with Ms. Scott." Id. The ALJ summarized Ms. Scott's counseling session notes and further noted the marked limitations of the opinion were not supported by the "objective medical signs and findings," which were "relatively mild." Id. Additionally, the ALJ noted that Ms. Scott, as a licensed clinical social worker, is not an acceptable medical source. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Also, even if Dr. Puls could be considered a treating physician, opinions on matters reserved to the Commissioner are not permitted to be given controlling weight. See Butler, 410 Fed.Appx. at 142.

Plaintiff argues the ALJ failed to re-contact Dr. Puls and "attempted to impose her own medical expertise over that of the treating physician of record," and "could have had her own doctor assess Claimant's mental limitations, but she chose not to do so." The Court finds no

evidence in plaintiff's records to suggest that Dr. Puls could have provided any further information that would have been helpful to the ALJ, as he only saw plaintiff once. There is also no evidence to suggest that a consultative mental examination would have changed the ALJ's decision. More importantly, plaintiff's counsel did not request a consultative mental examination at the hearing. (R. 58). When a claimant for social security benefits is represented by counsel, the ALJ is entitled to "require counsel to identify the issue or issues requiring further development," and "[i]n the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." Hawkins v. Chater, 113 F.3d 1162, 1167-68 (10th Cir. 1997). Plaintiff fails to identify any evidence in the record which would prejudice plaintiff, trigger the ALJ's duty to re-contact Dr. Puls, or trigger the need to order a consultative mental examination. Plaintiff argues there is an unresolved conflict between the ALJ finding that plaintiff's depression is a severe impairment at step two, and her inclusion of only a mild mental limitation in her RFC. The Court finds no error here.

At step two, plaintiff is required to prove only a *de minimis* showing of impairment, and if he or she fails to do so, the evaluation process stops. See Hawkins, 113 F.3d at 1169. Here, the ALJ found that plaintiff met the *de minimis* showing requirement regarding depression. Step four of the sequential evaluation process involves three steps: (1) evaluation of a claimant's physical and mental RFC, (2) determination of the physical and mental demands of a claimant's past relevant work, and (3) determination of whether or not a "claimant has the ability to meet the job demands found in [step] two despite the mental and/or physical limitations found in [step] one." Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). In the instant case, after discussing plaintiff's mental records at length, including the opinion of Dr. Puls, the ALJ included the mental limitation of "simple and some complex tasks" in plaintiff's RFC, which is well

supported by the mild evidence found in Ms. Scott's records. (R. 13). Plaintiff again argues the ALJ failed to consider Dr. Puls' opinion in reaching her decision on plaintiff's mental limitations. As discussed *supra*, the ALJ had already properly discounted Dr. Puls' opinion, and the undersigned finds this limitation representative of the weight she assigned Dr. Puls' opinion.

Plaintiff next argues the ALJ did not "adequately evaluate" plaintiff's finger, hand, and wrist limitations and that the consultative examination of Dr. Wagner contradicts the ALJ's findings. The undersigned disagrees. Plaintiff initially claimed on June 15, 2009 that "nerve damage in [her] left hand" was the condition limiting her ability to work. (R. 134). On February 1, 2010, plaintiff first noted problems with her right hand. (R. 169). She stated on this Disability Report – Appeal form that she was seeing a doctor for this change, but failed to provide any further information to the Commissioner. (R. 169-70). The evidence of record shows plaintiff visited Njanja M. Ruenji, PA-C for treatment of her hand problems. Mr. Ruenji referred plaintiff to Austin A. Lyle, PAC, of The Orthopaedic Center for examination. Mr. Lyle examined plaintiff, finding full range of motion in her right hand, positive Phalen's and Tinel's signs, "some wasting of the thenar eminence," and "widened two-point discrimination." (R. 219). His impression was carpal tunnel syndrome of the right wrist. Id. Mr. Lyle recommended a "cockup splint" and an EMG. (R. 220). No records of an EMG are contained in the file. The ALJ discussed Dr. Wagner's, July 11, 2009 findings regarding both of plaintiff's hands, Mr. Ruenji's overall notes, and Mr. Lyle's July 7, 2010 diagnosis of carpal tunnel syndrome in her right wrist. (R. 14). Dr. Wagner noted plaintiff moved "all extremities well," that there was "mild deformity" of the left hand, resulting in weak ability to manipulate small objects and grasp tools on the left, but otherwise noted ranges of motion within normal limits for both hands. (R. 179-80). Grip strength was noted as 4/5 on the left and 5/5 on the right, finger to thumb opposition, and "fine

tactile manipulation of objects" were normal. (R. 179). The ALJ found plaintiff able "to handle and finger frequently, but not constantly" to accommodate the limitation proven by objective evidence for plaintiff's hands. The Court finds that the consultative examination does not contradict the ALJ's findings and that sufficient evidence supports the ALJ's finding and declines to reweigh the evidence. See Clifton v. Chater, 79 F.3d 1007, 1008 (10th Cir. 1996) (holding that the court will not "engage in the task of weighing evidence in cases before the Social Security Administration.").

**Step Four**

Plaintiff argues the ALJ erred by finding she could return to her past relevant work as a housekeeper, kitchen helper, cashier, or janitor, claiming the ALJ did not perform the second step of the three pronged analysis required at step four of the evaluation process. (Dkt. # 13 at 7). As discussed *supra*, step four of the sequential evaluation process involves three phases: (1) evaluation of a claimant's physical and mental RFC, (2) determination of the physical and mental demands of a claimant's past relevant work, and (3) determination of whether or not a "claimant has the ability to meet the job demands found in [step] two despite the mental and/or physical limitations found in [step] one." Winfrey, 92 F.3d at 1023.

The undersigned previously determined the ALJ properly formulated plaintiff's RFC for medium work with the limitations of handling and fingering frequently, but not constantly, and the limitation of simple and some complex tasks at step one of the three pronged analysis. (R. 13). While the ALJ did not specifically discuss her phase two analysis at step four, she did state she compared "the claimant's residual functional capacity with the physical and mental demands of" her past relevant work and found "that the claimant is able to perform it as actually and generally performed. The vocational expert testified these jobs are within the residual functional

capacity of this decision." (R. 18). In stating that she relied on testimony from the vocational expert to reach her decision, the ALJ did not err. She is entitled to rely on the vocational expert at phases two and three of the Winfrey analysis. See Doyal, 331 F.3d at 761.

In the ALJ's analysis of plaintiff's RFC determination, she provided a detailed discussion of plaintiff's accepted mental limitations, and the undersigned sees no benefit to having the ALJ repeat that discussion for the phase two analysis of plaintiff's mental demands of her past relevant work. "[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173. Furthermore, the ALJ's discussion of the evidence and her reasons for her conclusions demonstrate that she considered all of plaintiff's impairments.

**Credibility**

Plaintiff's final argument is that the ALJ failed to perform a proper credibility analysis. The Court finds to the contrary. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotation and citation omitted). The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." Id. The ALJ can look at objective factors, such as attempts to find relief, use of medications, regular contact with doctors, and daily activities when determining a claimant's credibility. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).

The ALJ listed plaintiff's sparse and infrequent treatment for the allegedly disabling impairments. (R. 17). She also listed plaintiff's lack of compliance with prescribed medication,

id., and the fact Dr. Puls opined that plaintiff's prognosis was good with continued treatment and medication management. Id. As to plaintiff's testimony that she was not taking prescribed medication because she could not afford it, the ALJ noted plaintiff provided no evidence she had tried to obtain health care and been denied, stating if her symptoms were as debilitating as she alleged, she would have exhausted all avenues, including "indigent" health care facilities run by government agencies. (R. 17-18). In light of the deference afforded the ALJ on the issue of credibility and the fact that the ALJ did cite to specific evidence which could fairly be interpreted as creating a credibility issue, the Court finds the ALJ's credibility determination to be supported by substantial evidence.

## Conclusion

The decision of the Commissioner finding plaintiff not disabled is AFFIRMED.

SO ORDERED this 6th day of November, 2012.

_____
T. Lane Wilson
United States Magistrate Judge